# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RANGA BRAHMAMDAM, M.D.                    Case No. 1:19-cv-152
    Plaintiff,                          Dlott, J
                                        Litkovitz, M.J

    vs.


TRIHEALTH INC., *et al*.,                          **ORDER**
    Defendants.

    Plaintiff Ranga Brahmamdam brings this employment discrimination action alleging claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., 29 U.S.C. § 626, 42 U.S.C. § 1985, and state law.  (Doc. 1).  This matter is before the Court on defendants TriHealth G, LLC and TriHealth, Inc. ("TriHealth")'s motion to compel production of documents (Doc. 56), plaintiff's memorandum in opposition (Doc. 58), TriHealth's reply memoranda (Docs. 62, 66), and plaintiff's sur-reply in opposition (Doc. 69).  This matter is also before the Court on plaintiff's motion to compel medical provider and damage information from defendant Margo Alexander ("Alexander") (Doc. 57), Alexander's memorandum in opposition (Doc. 59), and plaintiff's reply memorandum (Doc. 63).

## I.  Standard of Review

    The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  "'Relevant evidence' is broadly defined as evidence that 'has any tendency to make a fact more or less probable than it would be without the evidence. . . .'"  *Stewart v. Neil*, No. 1:16-cv-1056, 2021 WL 1192741, at *4 (S.D. Ohio Mar. 30, 2021) (citing Fed. R. Evid. 401(a)).  "Relevance is construed very

broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-cv-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018).  Moreover, "[i]n the context of Rule 26, relevance 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Madera v. KTC Express, Inc.*, No. 3:19-cv-1516, 2021 WL 1206437, at *2 (N.D. Ohio Mar. 31, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  "District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (internal citation omitted)  *See also Johnson v. Gallia Cty. Commr's*, No. 2:20-cv-65, 2021 WL 716621, at *2 (S.D. Ohio Feb. 24, 2021) ("Determining the scope of discovery is within the Court's discretion.").

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to provide discovery responses. Fed. R. Civ. P. 37(a)(3).  In a motion to compel, the movant "bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enterprises, Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted).  *See also Hunter v. Shield*, No. 2:18-cv-1097, 2020 WL 6484055, at *2 (S.D. Ohio Nov. 4, 2020) (same).  The Court must balance the need of a party to access the information necessary to establish its claim or defense and overly broad requests that amount to a fishing expedition.  *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

## II.  Resolution

There are two separate disputes before the Court.  First, TriHealth seeks access to plaintiff's medical records from 2013 to the present.  (Doc. 56).  Second, plaintiff requests medical provider and damage information from Alexander.  (Doc. 57).  The undersigned held

three separate telephone discovery conferences in this matter in an attempt to informally resolve the pending discovery disputes. (*See* 2/16/2021, 2/23/2021, 3/11/2021 docket entries). At the request of the Court, the parties have briefed the discovery issues, and the parties' motions to compel are ripe for resolution. The Court has carefully reviewed the parties' briefs and will address each of the motions to compel in turn.

### A. Defendant TriHealth's motion to compel (Doc. 56)

TriHealth served interrogatories and document requests upon plaintiff seeking the production of, among other documents, plaintiff's medical records from 2013 to the present:

> 18. For the period 2013 to the present, identify the health care providers, including without limitation, doctors, hospitals, clinics, physical and mental health professionals, counselors, psychiatrists or psychologists, who have examined or treated plaintiff and state the telephone number and address of each provider, and the dates of examination and treatment of the injury, illness or condition that caused plaintiff to see each provider.
>
> * * *
>
> 21. All documents that reflect, refer to, or relate to plaintiff's physical or mental health from 2013 to the present (including but not limited to notes, records, receipts, bills, invoices, appointment cards, correspondence, diagnoses, and prognoses), from or held by doctors, hospitals, physicians, psychiatrists, psychologists, counselors, social workers, or any other medical or healthcare facility or practitioner or health insurance provider.

(Doc. 56-1 at PAGEID 471, 482). Plaintiff objected to TriHealth's requests as "they are irrelevant and will not lead to the discovery of admissible evidence at trial." (*Id*.).

TriHealth seeks plaintiff's medical records on the basis that they are relevant to reducing or eliminating plaintiff's damages under the after-acquired evidence doctrine. (Doc. 56 at PAGEID 457). Pointing to exhibits in support of its motion to compel (Doc. 56-1, Exhibits 2-6; Doc. 66-1, Exhibits 1-9), TriHealth contends that plaintiff's "own communications during his employment with TriHealth have put his medical records squarely at issue in this case." (Doc.

56 at PAGEID 457; *see also* Doc. 66 at PAGEID 639-41). TriHealth alleges that these documents suggest that plaintiff's medical conditions and his use and abuse of medications, as well as information showing plaintiff was improperly providing Alexander with medication, may constitute misconduct that could have resulted in plaintiff's termination prior to the date he was fired by TriHealth in August 2018. TriHealth contends it is entitled to review plaintiff's medical records "to support an after-acquired evidence defense which would preclude or limit plaintiff's damages." (Doc. 56 at PAGEID 454, 456-57; *see also* Doc. 62 at PAGEID 591-93).

Plaintiff argues that his medical records from 2013 to present are not relevant under the after-acquired evidence doctrine because TriHealth has not shown that plaintiff's conduct was of such severity that TriHealth would have, in fact, terminated him. (Doc. 58 at PAGEID 541-42). Plaintiff alleges that TriHealth has failed to cite to a policy, procedure, or practice that, under the circumstances alleged, would have immediately caused plaintiff's termination from TriHealth. (*Id*. at PAGEID 542-43).

Plaintiff initially argues that the Court should not compel him to produce his medical records from 2013 to the present because TriHealth's after-acquired evidence defense is meritless. The Court, however, is not persuaded. Plaintiff's request for a merits-based assessment of TriHealth's request in its motion to compel is premature at this juncture because "[a] court does not consider the underlying merits of a [party's] claims in evaluating a motion to compel" and arguments directed at the merits of a party's claims or the viability of affirmative defenses should be addressed by way of dispositive motion or at trial and not during a discovery dispute. *Stafford v. Jewelers Mut. Ins. Co*., No. 3:12-cv-50, 2012 WL 6568325, at *3 (S.D. Ohio Dec. 17, 2012) (citations omitted). *See also South Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-cv-52, 2018 WL 1721936, at *3 (W.D. Ky. Apr. 9, 2018) ("the scope of a motion to compel . . .

4

is confined to an evaluation of whether the discovery sought in relevant to a claim or defense").
Therefore, the Court declines to assess the actual merits of any after-acquired evidence defense
at this juncture.

Under the after-acquired evidence doctrine, evidence of an employee's misconduct that
comes to light after the employee's termination may constitute an independent ground for
termination and bar damages against the former employer. *McKennon v. Nashville Banner Pub.
Co.*, 513 U.S. 352, 362-63 (1995). Where the former employer demonstrates that an employee
would have been terminated anyway had the employer known of the wrongful conduct by the
employee, the employee's damages are limited from the time of the unlawful, discriminatory
discharge to the date the employer learned of the misconduct. *Id.* at 361-62 (as a general rule in
these cases reinstatement and front pay are not appropriate remedies); *Thurman v. Yellow Freight
Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996) (same). An employer relying on after-acquired
evidence of wrongdoing "must first establish that the wrongdoing in fact occurred," and second
"that the wrongdoing was of such severity that the employee in fact would have been terminated.
. . ." *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1154 n.5 (6th Cir. 1995) (internal
quotation and citation omitted).

In the discovery context, the after-acquired evidence doctrine "should not be used to
independently initiate discovery." *Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05-cv-1056,
2006 WL 1627020, at *5 (M.D. Fla. June 6, 2006). "Courts generally agree that the after-
acquired evidence defense 'cannot be used to pursue discovery in the absence of some basis for
believing that after-acquired evidence of wrong-doing will be revealed.'" *Sanders v. Dalcraft,
LLC*, No. 3-09-cv-307, 2009 WL 1392602, at *2 (N.D. Tex. May 18, 2009) (quoting
*Chamberlain v. Farmington Sav. Bank*, No. 3:06CV1437, 2007 WL 2786421, at *2 (D. Conn.

Sept. 25, 2007)).  An employer "must have some preexisting basis to believe that after-acquired evidence exists before it can take on additional discovery." *Maxwell*, 2006 WL 1627020, at *5. *See also Petrunti v. Cablevision*, No. CV 08-2277, 2008 WL 11450700, at *5 (E.D. N.Y. Dec. 23, 2008) (and cases cited therein).  Moreover, a defendant "cannot use the after-acquired evidence defense to conduct extensive discovery . . . on the basis of pure speculation." *Reed v. Madison Cty., Mississippi*, No. 3:16-cv-51, 2016 WL 11640189, at *3 (S.D. Miss. Nov. 1, 2016) (quoting *Chamberlain*, 2007 WL 2786421, at *3).

In connection with its motion to compel, TriHealth presents several exhibits that it alleges support its "concerns" that plaintiff may have been unfit to work for TriHealth and warrant the discovery of plaintiff's medical records.  TriHealth's exhibits include an email from plaintiff stating he has "ndd-syndrome" (Doc. 56-1 at PAGEID 485); communications between plaintiff and Alexander about their respective ADD diagnoses and strategies, plaintiff's stress from mentoring students, plaintiff providing Alexander with prescription medication, and plaintiff's use of the prescription drug Adderall (*Id*. at PAGEID 487, 492, 498-99; Doc. 66-1 at PAGEID 647-52, 656, 658, 662-63, 668, 670); communications between plaintiff and resident Dr. Shirisha Pasula concerning plaintiff's use and/or possible abuse of the medication Zoloft and relationship issues between the two (Doc. 56-1 at PAGEID 489-90, 494; Doc. 66-1 at PAGEID 660, 665); a photograph of a portion of a prescription bottle showing plaintiff as the prescribing physician[1] (Doc. 56-1 at PAGEID 496); and unidentified documents and writings[2] (Doc. 66-1 at PAGEID 644, 646, 654, 667, 669).

The documents TriHealth submits fail to establish the necessary preexisting basis to believe that plaintiff's medical records will provide after-acquired evidence of wrongdoing.

---

[1] The photograph does not show the name of the medication or the name of the patient.
[2] TriHealth has produced no evidence identifying the author(s) of these writings.

*Maxwell*, 2006 WL 1627020 at *5. First, TriHealth alleges that these documents support its "concerns that Plaintiff's medical condition or use of medication may have rendered him unqualified to work for TriHealth" and warrant a review of plaintiff's medical records. (Doc. 56 at PAGEID 456). However, TriHealth has not explained under what circumstances a physician may be rendered "unqualified" to work for TriHealth such that discovery into potential after-acquired evidence would be relevant in this case. TriHealth has not cited to any policies, practices, or other authority identifying when and how specified medical conditions and/or diagnoses may render a physician in its employ "unfit" to practice medicine such that termination of the physician's employment would have occurred in any event. TriHealth appears to suggest that once a physician has been diagnosed with a mental health condition (e.g., stress, PTSD, or ADHD), his or her medical records become fair game for discovery to explore whether that condition has affected the physician's fitness for duty, even in the absence of any other evidence calling into question the physician's performance, such as patient complaints or aberrant behavior observed by staff or patients. Simply suffering from a mental health condition that has not been tied to previously identified performance issues should not open the discovery floodgates to a litigant's private and sensitive medical records. While discovery of medical records may be warranted when a litigant seeks emotional distress damages by placing his or her mental health history into question, *see infra* at pp. 11-18, there is no dispute that plaintiff is not seeking to recoup such damages in this case. TriHealth has not met its burden to show that plaintiff's medical records may be relevant to an after-acquired evidence defense in this case.

Second, TriHealth alleges that plaintiff's medical conditions and medication usage are relevant to his relationships with Dr. Pasula, a female resident, and Alexander. TriHealth also suggests that if plaintiff gave Alexander medications prescribed for himself or his family

members that would be relevant "to Alexander's claim to TriHealth that Plaintiff's misconduct toward her included his identification and manipulation of her known vulnerabilities." (Doc. 66 at PAGEID 639). TriHealth never explains, however, how plaintiff's medical records would shed any light on his alleged mistreatment of Alexander or his "relationships" with co-workers and how that is relevant to the claims or defenses in this case. To the extent TriHealth alleges plaintiff improperly gave Alexander medication, which was in part a reason for his termination, the Court is unable to discern how plaintiff's medical records can be considered after-acquired evidence—one of the bases for TriHealth's request for plaintiff's medical records.

Third, TriHealth contends that plaintiff accused Alexander and Dr. Pasula of suffering from mental health issues. TriHealth alleges it should be permitted to review plaintiff's medical records "to explore" the basis for plaintiff's accusations because he is not a mental health professional. TriHealth suggests it should be able to obtain plaintiff's medical records to determine whether he is basing his purported knowledge of mental health conditions on his own personal experience. Again, TriHealth has not explained how the source of plaintiff's knowledge of mental health issues is relevant to the claims or defenses in this case. The Court is simply unable to discern how plaintiff's medical records are relevant to the issues here.

TriHealth cites to a single case, *Equal Emp. Opportunity Comm'n v. Big Five Corp.*, No. C17-1098, 2018 WL 2317613 (W.D. Wash. May 22, 2018), in support of its argument that plaintiff's medical records from 2013 to the present are available to it under the after-acquired evidence doctrine. That case is distinguishable.

The court in *Big Five Corp.* granted the employer's motion to compel the plaintiff's medical and hospitalization records as relevant to determine whether the employer could use the after-acquired evidence doctrine to limit the plaintiff's recovery. *Big Five Corp.*, 2018 WL

2317613, at *5.  There, the plaintiff asserted various violations of state and federal law against the employer arising from the plaintiff's employment.  *Id*. at *1-2.  The employer filed a motion to compel the plaintiff's medical records from an involuntary mental health hospitalization to support its after-acquired evidence defense.  *Id*. at *1, 4-5.  The employer argued that the plaintiff's involuntarily commitment for psychiatric treatment would have disqualified him "from selling firearms under federal and state law, and he would not have been hired by [the defendant] nor would [the defendant] have continued to employ him."  *Id*. at *4.  The court agreed and found that "depending on what [the plaintiff's] medical records reveal, [the plaintiff's] detention and hospitalization may have disqualified him from employment with [the defendant].  Therefore, [the defendant] is entitled to review [the plaintiff's] medical records related to that hospitalization to determine whether it can employ the after-acquired evidence doctrine to limit recovery on [the plaintiff's] alleged wage damages."  *Id*. at *5.

In contrast to the showing made by the employer in *Big Five Corp*., which identified state and federal laws that would have disqualified the plaintiff from employment with the defendant, TriHealth fails to identify any state or federal laws, internal policies, practices, or procedures suggesting that plaintiff's medical conditions or actions could have disqualified plaintiff from employment with TriHealth.  TriHealth has not shown under what circumstances a physician's mental health issues or use of medication could disqualify him from TriHealth's employ or make the physician unfit to practice medicine.  TriHealth has not provided "any information suggesting it has a specific basis for believing that an after-acquired evidence defense might be developed here."  *Perry v. Best Lock Corp*., No. IP 98-C-936, 1999 WL 33494858, at *3 (S.D. Ind. Jan. 21, 1999).  As TriHealth fails to allege specific facts that could reasonably give rise to a finding that plaintiff could have been terminated based on his mental health conditions, its pursuit of eight

years of plaintiff's medical records "would be an unwarranted fishing expedition." *Oates v. Target Corp.*, No. 11-14837, 2012 WL 6608752, at *1 (E.D. Mich. Dec. 18, 2012); *see also Liles v. Stuart Weitzman*, LLC, No. 09-61448, 2010 WL 1839229, at *4-5 (S.D. Fla. May 6, 2010). Accordingly, TriHealth's generalized statement that plaintiff may be unfit for the practice of medicine, based upon the diagnoses and communications referenced in TriHealth's exhibits, is an insufficient reason to justify an examination of plaintiff's medical records.

For the foregoing reasons, TriHealth's motion to compel is **DENIED**.

### B. Plaintiff's motion to compel (Doc. 57)

Plaintiff requests an order from the Court compelling Alexander to produce her medical records from June 1, 2015 to the present and to specifically identify the nature and extent of her damages. (Doc. 57).[3] Specifically, plaintiff served interrogatories and document requests upon Alexander, two of which are the subject of plaintiff's motion to compel before the Court:

> 19. Identify all of Alexander's health care providers including, without limitation, doctors, hospitals, clinics, physical and mental health care professionals, counselors, psychiatrists, or psychologists who have examined or treated Alexander and state the telephone number and address of each provider, and the dates of examination and treatment of the injury, illness or condition that caused Alexander to see each provider from January 1, 2015 to the present.
>
> **ANSWER: OBJECTION. This Interrogatory seeks information that is not relevant, is confidential and/or not proportional to the needs of the case. This Interrogatory is unduly burdensome, and is presented solely to harass, annoy and humiliate Defendant. Without waiving any objections, see, Response to Int. No. 14.**
>
> * * *
>
> 19. Produce all documents relating, referring, or relevant to Alexander's treatment by health care providers including, without limitation, doctors, hospitals, clinics,

---

[3] Plaintiff represented to the Court in his reply memorandum that the "request for an order requiring Alexander to amend her disclosures is now moot" because "Alexander formally supplemented her initial disclosures on April 14, 2021, by identifying the emotional distress damages she is seeking against the plaintiff in the case." (Doc. 63 at PAGEID 624, n. 2). At the request of counsel, the Court therefore DENIES as moot plaintiff's motion to compel Alexander to identify the nature and extent of her damages.

physical and mental health care professionals, counselors, psychiatrists, or pharmacists who have examined or treated Alexander and state the telephone number and address of each provider, and the dates of examination and treatment of the injury, illness or condition that caused Alexander to see each provider from January 1, 2015 to the present.

**RESPONSE: OBJECTION. This Request seeks documents that are not relevant, are confidential and/or are not proportional to the needs of the case. This Request is unduly burdensome, and is presented solely to harass, annoy and humiliate Defendant. Without waiving any objections, see, documents produced herein regarding prescriptions and medications provided to Alexander by Brahmamdam.**

(Docs. 57-3, 57-4).

Plaintiff argues that Alexander's medical records are relevant because Alexander "has placed her mental status at issue in asserting her counterclaims and seeking compensatory damages." (Doc. 57 at PAGEID 504). Specifically, plaintiff contends that the records "may reveal other stressors or conditions in Alexander's life which may have affected her mental condition other than the allegations in her counterclaim." (*Id*. at PAGEID 504-05). Plaintiff also argues that Alexander's medical records are relevant in the determination of whether her alleged medications and/or medical conditions "had an adverse effect on her ability to accurately recall the events in 2018." (*Id*. at PAGEID 505). In response, Alexander argues plaintiff's motion to compel should be denied because plaintiff's request is irrelevant, overbroad, and not proportional to the needs of the case, and the physician/patient privilege has not been waived. (Doc. 59).

Alexander first argues that her medical records are privileged because all of the claims between herself and plaintiff "are based on Ohio statutory or common law, not federal law." (*Id*. at PAGEID 564, 567). Alexander contends that under Ohio law[4], communications with a physician by a patient are privileged unless the patient waives or is deemed to have waived the privilege. (*Id*. at PAGEID 567). Plaintiff argues that federal law controls and "there is no

---

[4] Section 2317.02 provides that physician-patient communications are privileged. Ohio Rev. Code § 2317.02(B)(1).

physician/patient privilege under federal law." (Doc. 57 at PAGEID 506; *see also* Doc. 63 at PAGEID 624-26).

Federal common law governs the claim of privilege in this case. Where jurisdiction is based on a federal question, claims of privilege in the federal courts are based on federal common law. Fed. R. Evid. 501; *Hancock v. Dodson*, 958 F.2d 1367, 1372-73 (6th Cir. 1992); *see also Bose v. Rhodes College*, No. 16-cv-2308, 2017 WL 4479258, at *4 (W.D. Tenn. Oct. 6, 2017) (applying federal law of privilege where case based on federal question jurisdiction). Likewise, "the existence of pendent state law claims does not relieve [the court] of [the] obligation to apply the federal law of privilege." *Hancock*, 958 F.2d at 1373.

The federal courts do not recognize a physician-patient privilege nor "has Congress codified the concept in a federal statute." *G.M.C. v. Director of the Nat'l Institute for Occupational Safety & Health*, 636 F.2d 163, 165 (6th Cir. 1980); *see also Mann v. University of Cincinnati*, 114 F.3d 1188, 1997 WL 280188, at *4 (6th Cir. May 27, 1997) ("federal courts do not recognize a federal physician-patient privilege"); *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 551 (S.D. Ohio 2014) ("It is well-settled that, under the federal common law, there is no physician-patient privilege."). Therefore, Alexander's argument that state law controls the question of privilege in this case is not well-taken.

Nevertheless, while no physician-patient privilege is recognized under federal common law, the Supreme Court has held "that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The Supreme Court reasoned that the "privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important

interests to outweigh the need for probative evidence.'" *Id.* at 9-10 (internal quotation and citation omitted). "Like other testimonial privileges, the patient may of course waive the protection." *Id.* at 15, n. 14. The Sixth Circuit "has held that placing one's mental health at issue constitutes waiver of the privilege." *Simon v. Cook*, 261 F. App'x 873, 886 (6th Cir. 2008) (where probable cause determination hinged on whether detainee was mentally ill and dangerous, detainee puts his mental health at issue and waived the psychotherapist-patient privilege). *See also Maday v. Pub. Librs. of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007) (holding privilege waived when plaintiff sought mental-health damages and introduced some of her own mental health records as proof of her emotional distress damages).

Plaintiff argues that Alexander waived the psychotherapist-patient privilege because she placed her mental status at issue in asserting her counterclaims and seeking compensatory damages. (Doc. 57). Alexander argues that she has not waived the privilege because her emotional distress damages are "garden variety" and limited to damage to her "reputation, short-term embarrassment, humiliation, and other negative emotions and no physical manifestation of injury[.]" (Doc. 59 at PAGEID 569-70; *see also* Doc. 57-7 at PAGEID 524).

Here, the parties dispute whether Alexander waived the psychotherapist-patient privilege by asserting a claim of only "garden variety" emotional distress damages, which, according to Alexander, consists of "short term embarrassment, humiliation, or negative emotions[.]" (Doc. 59 at PAGEID 566; Doc. 57-7 at PAGEID 524). In a supplement to her initial disclosures, Alexander verifies that she is seeking "[c]ompensatory damages for damage to reputation through false statements, public scrutiny, short-term emotional distress, embarrassment, humiliation, and other negative emotions. . . ." (Doc. 59-1, Ex. A, at PAGEID 582).

In determining whether the psychotherapist-patient privilege had been waived, the Court "must examine the substance of [Alexander's] allegations to determine what type of damages she is pursuing." *Langenfeld*, 299 F.R.D. at 553. Generally, when a party limits his or her damages to "short-term negative emotions that would typically flow from an adverse employment action—i.e., what the parties refer to as 'garden variety' damages—he or she does not put his/her mental state 'at issue' so as to waive the psychotherapist-patient privilege." *Id.* at 552-53. While district courts within the Sixth Circuit have developed varying approaches to determine whether only "garden variety" emotional damages are sought, they have identified five circumstances under which more than "garden variety" damages are alleged such that the psychotherapist-patient privilege is waived:

> (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a).

*Id.* at 552 (and cases cited therein). *See also Kubik v. Cent. Michigan Univ. Bd. of Trustees*, No. 15-cv-12055, 2016 WL 9631633, at *4-5 (E.D. Mich. Mar. 17, 2016); *Bose*, 2017 WL 4479258, at *7. *Cf. In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 379 F. Supp. 3d 669, 672-73 (S.D. Ohio 2019) (examining same five factors to determine whether party's mental condition is "in controversy" such that independent medical exam under Fed. R. Civ. P. 35 is warranted). A party does not allege "garden variety" emotional distress damages if any one of the above factors is present. *Id*. Thus, the Court examines these factors to determine whether defendant Alexander is claiming something other than "garden variety" emotional damages and has therefore waived the psychotherapist-patient privilege in this matter.

First, it is undisputed that Alexander does not bring a claim for intentional or negligent infliction of emotional distress.[5]  Second, Alexander does not allege a specific mental or psychiatric injury; rather, Alexander asserts emotional distress damages limited to "short-term emotional distress, embarrassment, humiliation, and other negative emotions."  (Doc. 59-1, Ex. A, at PAGEID 582).  *Cf. Langenfeld*, 299 F.R.D. at 553 (plaintiff's specific claim of ongoing sleep deprivation constitutes an allegation of a specific mental or psychiatric injury or disorder which would waive the privilege.).

Third, Alexander does not assert a claim of unusually severe emotional distress.  There is nothing in the record before the Court showing that Alexander is asserting a claim of unusually severe emotional distress, nor has plaintiff introduced any evidence to the contrary.  Courts assessing this factor examine whether a "physical injury resulted from the emotional suffering." *See Kubik*, 2016 WL 9631633 at *4 (internal citations and quotations omitted) ("Garden variety damages generally exclude allegations of physical symptoms and harm corroborated by other witnesses."); *Atkins v. LQ Mgmt., LLC*, No. 3-13-562, 2014 WL 12776326, at *3 (M.D. Tenn. Sept. 30, 2014) (garden variety damages are "short–lived humiliation and embarrassment, pain and suffering, and emotional distress that did not result in any physical manifestations of emotional injury") (quoting *Butler v. Rue 21, Inc*., No. 1:11-cv-9, 2011 WL 1484151, *2 (E.D. Tenn. Apr. 19, 2011)).  *Cf. In re du Pont*, 379 F. Supp. 3d at 676.  Here, Alexander's emotional distress claims are limited to "damage to her reputation, short-term embarrassment, humiliation, and other negative emotions *and no physical manifestation of injury*" (Doc. 59 at PAGEID 569) (emphasis added), and she has verified through her supplemental disclosures that no physical

---

[5] For this reason, *Witschger v. E.I. DuPont de Nemour & Co*., No. 1:11-cv-814, 2012 U.S. Dist. LEXIS 160902 at ¶3 (S.D. Ohio Nov. 9, 2012), cited by plaintiff, is distinguishable.  The plaintiff in *Witschger* specifically alleged a separate cause of action for intentional infliction of emotional distress.

manifestations of any psychic injury is sought.  (Doc. 59-1, Ex. A, at PAGEID 582) (seeking "[c]ompensatory damages for damage to reputation through false statements, public scrutiny, short-term emotional distress, embarrassment, humiliation, and other negative emotions. . . ."). For these reasons, the Court does not find that Alexander asserted a claim of unusually severe emotional distress.

Fourth, there is no indication in the record that Alexander intends to offer expert testimony to support her claim for emotional distress damages.  "Courts find it more likely that emotional distress claims are not garden variety when the plaintiff offers expert testimony to support her claim for emotional distress damages."  *In re du Pont*, 379 F. Supp. 3d at 676 (examining this factor in determining whether to order for mental examination under Rule 35). *See also Kubik*, 2016 WL 9631633, at *5.

Finally, Alexander has not conceded that her mental condition is in controversy.  (*See* Doc. 57-7 at PAGEID 524; Doc. 59).  None of the relevant factors are present in this case to indicate that Alexander is claiming anything other than "garden variety" emotional damages. Accordingly, Alexander has not waived the psychotherapist-patient privilege, and her mental health records are not discoverable.

The Court notes, however, that the psychotherapist-patient privilege does not "cover the patient/psychotherapist's identity, the time of treatment, and/or the fact that any such treatment took place."  *Langenfeld*, 299 F.R.D. at 551 (citing *In re Zuniga*, 714 F.2d 632, 640 (6th Cir. 1983)).  *See also Big Five Corp*., 2018 WL 2317613 at *4 (finding allegation of nothing more than ordinary or commonplace emotional distress did not waive privilege as to mental health records, but discovery of occurrence and dates of any psychotherapy not privileged and discoverable).  In Interrogatory 19, plaintiff seeks the identity of Alexander's health care

providers, the telephone numbers and address of each of the providers, the dates of examination, "and treatment of the injury, illness or condition that caused Alexander to see each provider from January 1, 2015 to the present." (Doc. 57-3 at PAGEID 520). The Court **GRANTS IN PART** plaintiff's motion to compel Alexander to provide responses to plaintiff's interrogatory 19. The Court specifies that Alexander is **ORDERED** to provide complete responses to plaintiff's interrogatory 19 concerning the identity of Alexander's mental health care providers, the telephone numbers and address of each of those providers, and the dates of examination from January 1, 2015 to present as those are relevant and not privileged under the psychotherapist-patient privilege.[6] As discussed above, however, plaintiff's motion to compel Alexander to provide answers to Interrogatory 19 as to the "treatment of the injury, illness or condition that caused Alexander to see each provider from January 1, 2015 to the present" is **DENIED** as privileged information under the psychotherapist-patient privilege.

Finally, plaintiff argues Alexander's medical records from January 1, 2015 to the present are relevant "on her ability to testify credibly" and "for purposes of determining whether various medications and/or her mental conditions have had an adverse effect on her ability to accurately recall the events in 2018." (Doc. 57 at PAGEID 505, 508). The Supreme Court, however, has rejected this argument: "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Jaffee*, 518 U.S. at 17. *See In re Sims*, 534 F.3d 117, 141 (2d Cir. 2008) ("[R]espondents simply seek to have the privilege breached whenever there is a possibility that the psychiatric records may be useful in testing the plaintiff's credibility or may have some other probative value. To accept these

---

[6] Plaintiff has not alleged how Alexander's non-mental health information is relevant to any claim or defense in this matter, and the Court exercises its discretion to prohibit disclosure of such information.

contentions would inject the balancing component that *Jaffee* foreclosed. . . .”); *see also Bose*, 2017 WL 4479258 at *6; *Kubik*, 2016 WL 9631633 at *6 (and cases cited therein). Accordingly, consistent with *Jaffee*, the Court finds disclosure of Alexander's medical records on this basis is not warranted.

### IT IS THEREFORE ORDERED THAT:

1. Defendant TriHealth's motion to compel production of documents (Doc. 56) is **DENIED**; and

2. Plaintiff's motion to compel medical provider and damage information from defendant Alexander (Doc. 57) is **DENIED IN PART** and **GRANTED IN PART**. Plaintiff's motion to compel defendant Alexander to identify the nature and extent of her damages is **DENIED** as moot. Defendant Alexander is **ORDERED** to provide complete responses to plaintiff's Interrogatory 19 concerning the identity of defendant Alexander's mental health care providers, the telephone numbers and address of each of the providers, and the dates of examination from January 1, 2015 to present as those are not privileged under the psychotherapist-patient privilege. Plaintiff's motion to compel (Doc. 57) is **DENIED** in all other aspects.

Date: ___6/22/2021___

Karen L. Litkovitz
Chief United States Magistrate Judge